# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE,
# AT KNOXVILLE

| | |
|---|---|
| **JOBSITE STEEL MANUFACTURING, LLC,** ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | **Case No. 3:18-cv-00114** |
| ) | |
| **FRAMECO, INC, a/k/a FRAMECO FRAMING, INC,** ) | |
| **a/k/a METAL FRAMING INDUSTRIES, LLC** ) | |
| **and JOSHUA MENSINGER** ) | |
| ) | |
| Defendant ) | |

## AMENDED COMPLAINT

Comes the Plaintiff, Jobsite Steel Manufacturing, LLC (hereinafter "Jobsite"), by and through counsel, and for cause of action against the Defendants, FrameCo, Inc., a/k/a FrameCo Framing, Inc., a/k/a Metal Framing Industries, LLC (hereinafter "FrameCo") and Joshua Mensinger (hereinafter "Mensinger"), would say unto the Court as follows:

## PARTIES

1. That Jobsite is a Tennessee limited liability Company authorized and existing under the laws of the State of Tennessee with a principal office and place of business in Loudon County, Tennessee.

2. That FrameCo is believed to be a corporation authorized and existing under the laws of the State of Ohio. FrameCo is not registered with the Tennessee Secretary of State's office despite FrameCo doing substantial work in the state of Tennessee. FrameCo may be served by serving its Ohio Registered Agent, Kevin Wyman, 13620 Enterprise Avenue, Cleveland, Ohio 44135.

3. That Mensinger is believed to be a citizen and resident of the State of Texas upon who service of process may be obtained by serving him at his residence at 105 Brandy Lane, Waxahachie, Texas 75167.

**FACTS**

4. That Mensinger began work as an employee of Odom Construction Systems, LLC (hereinafter "Odom") on January 4, 2016, and on January 5, 2016, Mensinger executed and delivered to Odom a Confidentiality Agreement, a copy of which is attached hereto as Exhibit A.

5. That the Confidentiality Agreement provides, in part, that Odom has certain proprietary information, trade secrets and intellectual property to which Odom holds rights. The Confidentiality Agreement says, in part "…we also wish to remind you about the types of information of which you will be aware of as a result of your employment with the company and the fact that the company considers this information to be confidential. The types of information you must not disclose include financial information, balance sheets, income statements, salaries, or reports including job cost reports or any information that reveals the financial status of the company. Additionally, we are developing a panel and truss system that is confidential both in its development and implementation. All information regarding this system is to be held in strictest confidence."

6. That Jobsite and Odom worked on the panel and truss system together and Jobsite is a third party beneficiary of the Confidentiality Agreement since Jobsite directly benefits from the requirement that Mensinger keep all information gained from his employment at Odom confidential, especially information regarding the panel and truss system. The panel and truss system is a trade secret of Jobsite. Furthermore, Jobsite has a security interest in all assets of Odom to secure all obligations of Odom owing to Jobsite. A copy of the Security Agreement dated

December 22, 2010, and the UCC Financing Statement, as assigned to Jobsite, are attached hereto and incorporated herein by reference as <u>Exhibit B</u>. Pursuant to said Security Agreement, Odom has a duty to Jobsite to protect and maintain value of its collateral including the panel and truss system, trade secrets and confidential information through measures such as the Confidentiality Agreement attached hereto as Exhibit A.

7. That during Mr. Mensinger's employment with Odom and Jobsite, as reflected in the Confidentiality Agreement, Mr. Mensinger had access to, and reviewed and obtained, significant confidential information regarding the job bidding procedures of Odom and Jobsite, specifically, bidding projects, costs for projects, use of the panel and truss system developed by Odom and Jobsite, and had and continues to have such confidential information as he gained during his course of employment with Odom and Jobsite.

8. That Mensinger remained employed by Odom until April of 2017. At that time, Mr. Mensinger began working for Jobsite.

9. That in early August of 2017, Mr. Mensinger left the employment of Jobsite and took employment with FrameCo, an Ohio corporation, in a substantially similar business as Odom and Jobsite. Mensinger has been and continues to be employed by FrameCo and, as such, his actions herein are imputed to FrameCo since he was acting as FrameCo's employee and for the benefit of FrameCo.

10. That Jobsite and Odom, during Mr. Mensinger's employment with them, had submitted bids to TDH, Inc. (hereinafter "TDH")—the general contractor for the owners of the Regas Square Project—to work on what is known as the Regas Square Project in Knoxville, Tennessee. The Regas Square Project is the revitalization of the Regas building which includes

building hundreds of condominiums and living spaces and is a significant financial project not only for Knoxville, Tennessee, but for all companies and individuals hired to work on the project.

11. That, in fact, in early August 2017, representatives of Odom had met numerous times with TDH, were invited to the Regas site, met the developers, and through numerous conversations with TDH were advised that they would be providing material and work on the Regas Square Project.

12. That on the Regas Square Project, Odom would have provided the carpenters, and other related workers, as well as framing functions, and Jobsite would have provided the design and the materials for the framing of the Regas Square Project. The panel and truss system is one of the keys to product that both Jobsite and Odom can provide to projects such as the Regas Square Project and Mensinger's knowledge of both of these companies and the panel and truss system is significant because he was employed by both Odom and Jobsite. The panel and truss system allows Jobsite and Odom to provide a product that is high in quality that allows for a shorter framing time (and thus reduces costs), and allows Jobsite and Odom to be highly competitive in their industry.

13. On August 2, 2017, Odom, at the request of TDH, attended a pre-construction/structural coordination meeting held at the Regas Square site to work through the construction details. The status of the Odom/Jobsite shop drawings was reviewed at this meeting, along with the construction sequence on the Regas Square site and how that sequencing would affect Odom and Jobsite deliveries and staging. TDH made very clear at this meeting that the purpose of this meeting was to get all parties involved to start interacting on the site to enhance coordination of the construction of the Regas Square Project.

14. That a gentleman by the name of Charles Wright, who also was employed by Odom, was laid off by Odom and went to work for TDH in the summer of 2017. Upon information and belief, Mr. Mensinger and Mr. Wright were friends.

15. That not long after the August 2, 2017, meeting with Odom and the representatives representing the Regas Square Project, Odom and Jobsite suddenly learned that FrameCo was likely to be awarded the same work at the Regas Square Project that Jobsite and Odom had been promised.

16. That pursuant to an incorrectly addressed email sent by an engineer by the name of Robert Warr, a copy of which is attached hereto as Exhibit C, Jobsite and Odom learned that Mensinger was involved with FrameCo and Charles Wright at TDH regarding FrameCo's acquisition of the job at Regas Square.

17. That, in fact, as it appears from the email and other circumstances, Mensinger used the confidential information he obtained from Odom and Jobsite in an effort to intentionally interfere with the business relations of Jobsite and Odom regarding the Regas Square Project and to intentionally breach his Confidentiality Agreement.

18. That as a direct result of the actions of Mensinger while employed at FrameCo, Odom and Jobsite, because of Mensinger's illegal conduct, lost the Regas Square project to FrameCo.

19. That because of the ill will that Mensinger expressed and had and continues to have for Jobsite and Odom, Mensinger conspired with FrameCo, and FrameCo conspired with Mensinger, to deprive Odom and Jobsite of the job at the Regas Square Project.

20. That FrameCo, through its employee Mensinger, was aware that Odom and Jobsite had bid for and had begun preparation for working on the Regas Project.

21. That Mensinger, as an employee of FrameCo and to the benefit of FrameCo, using information derived and obtained from his employment at Odom and at Jobsite, advised TDH that Odom was under financial stress and could not perform the project, and thus intentionally interfered with the prospective business relationship of Jobsite and Odom with TDH, Inc. on the Regas Square Project to the detriment of Jobsite and Odom and to the benefit of FrameCo.

22. That FrameCo was awarded the Regas Square Project—the same project that Odom and Jobsite had begun work on before Mensinger left the employment of Odom and then Jobsite—almost immediately after Mensinger left the employment of Jobsite to work with FrameCo.

## COUNT I – INTERFERENCE WITH BUSINESS RELATIONS

23. That the allegations and averments of Paragraphs 1 through 22 are incorporated herein by reference as if stated in verbatim.

24. That Jobsite had a business relationship with TDH and had a reasonable expectancy to complete the Regas Square Project.

25. That Mensinger had knowledge of the relationship of Jobsite and Odom with TDH, had knowledge of the potential job that Jobsite was striving to obtain, and had knowledge of the expectancy of Jobsite to obtain such job.

26. That because of Mensinger's ill will for leaving Odom and Jobsite and the dispute over the commissions that he alleges are due in a separate lawsuit filed by Mensinger against Odom bearing docket number 194672-1 in this Court, Mensinger, as an employee of FrameCo, intentionally acted, for his benefit and for the benefit of FrameCo, to interfere with the business relationships of Odom and Jobsite.

27. That Jobsite has been significantly damaged by the actions of FrameCo and Mensinger, by expending time and expenses in preparing bids and materials and generally planning for the Regas Square Project, and that Jobsite expected to make a minimum of $500,000.00 of profit from this project.

## COUNT II – CONSPIRACY

28. That the allegations and averments of Paragraphs 1 through 27 are incorporated herein by reference as if stated in verbatim.

29. That Jobsite would allege and aver that Mensinger conspired with FrameCo, and FrameCo conspired with Mensinger, to deprive Jobsite of its expected business relationship with TDH and to work on the Regas Square Project in Knoxville, Tennessee.

30. That as a result of such conspiracy, Jobsite has been damaged in an amount no less than $500,000.00.

## COUNT III – ILLEGAL USE OF TRADE SECRETS

31. That the allegations and averments of Paragraphs 1 through 30 are incorporated herein by reference as if stated in verbatim.

32. That Mensinger, during his employment with Odom and Josbite, obtained certain confidential information, including trade secrets regarding the panel and truss system used by Odom and Jobsite. Mensinger used information regarding the panel and truss system and additional confidential information obtained from both Odom and Jobsite to assist Mensinger in having the Regas Square Project awarded to FrameCo instead of Odom and Jobsite. Mensinger improperly disclosed this secret information to FrameCo and others.

33. That Mensinger, as an employee of FrameCo, disseminated untruthful information regarding the financial status of Odom to advise TDH that Odom was, incorrectly, having financial issues, when it was not, that resulted in TDH choosing not to hire Odom and Jobsite.

34. That as a result of the illegal sharing of trade secrets by Mensinger while he was an employee of FrameCo and for FrameCo's benefit, Jobsite has been damaged in an amount no less than $500,000.00.

35. That Mensinger and FrameCo, jointly and severally, violated the provisions of TCA § 47-25-1701, et. seq., by illegally sharing trade secrets with others and as a result of these violations of these code provisions Jobsite is entitled to damages as provided by TCA § 47-25-1704 and attorney's fees as provided by TCA § 47-25-1705.

## **COUNT IV – RESPONDEAT SUPERIOR**

36. That the allegations and averments of Paragraphs 1 through 35 are incorporated herein by reference as if stated in verbatim.

37. That Mensinger became an employee of FrameCo in early August of 2017.

38. That FrameCo, as the employer of Mensinger, is liable for the actions of Mensinger under the doctrine of respondeat superior.

39. That FrameCo directly benefited from the wrongful actions of its employee, Mensinger, regarding Mensinger's use of confidential and proprietary information of Jobsite and Odom that resulted in the Regas Square Project being taken from Odom and Jobsite and awarded to FrameCo.

40. That as result of these actions by FrameCo and Mensinger, Jobsite has been damaged in the amount of at least $500,000.00.

## COUNT V – BREACH OF CONFIDENTIALITY AGREEMENT

41. That the allegations and averments of Paragraphs 1 through 40 are incorporated herein by reference as if stated in verbatim.

42. That attached hereto as Exhibit A is the Confidentiality Agreement.

43. That by the very nature of Mensinger's action and the fact that FrameCo was awarded the Regas Square Project, and given the contents of the email from the engineer that is attached hereto as Exhibit C, it is clear that Mensinger used confidential information in assisting FrameCo in obtaining a job that was rightfully the job of Jobsite at the Regas Square Project.

44. That Mensinger used financial information that he obtained through Odom and Jobsite and advised FrameCo that Odom had financial problems, which it does not, that resulted in the TDH Development not hiring Odom or Jobsite for the Regas Square Project.

45. That Jobsite was an intended third party beneficiary of the Confidentiality Agreement and Mensinger was aware that the confidentiality of the information he obtained from his employment by Odom and Jobsite was as important to Jobsite as it was to Odom.

46. That as a result of the breach of the Confidentiality Agreement by Mr. Mensinger, Odom has been damaged in an amount of at least $500,000.00 due to lost profits.

## COUNT VI – UNJUST ENRICHMENT

47. That the allegations and averments of Paragraphs 1 through 46 are incorporated herein by reference as if stated in verbatim.

48. In the alternative, Plaintiff asserts that an unjust benefit has been conferred on the Defendant FrameCo, attributable to the highly valuable, confidential information and knowledge

about Plaintiff's business practices that was passed to it by Mr. Mensinger in violation of his Confidentiality Agreement with Plaintiff.

49. The Defendant FrameCo has appreciated and accepted the benefits of such confidential information about Plaintiff's practices under circumstances in which it would be inequitable for it to retain such benefit without payment to the Plaintiff for the value thereof.

50. The retention by the Defendant of the confidential knowledge and information about Plaintiff's business practices is an unjust benefit. Accordingly, Defendant should be held liable to Plaintiff for repayment of a money judgment entered in favor of the Plaintiff for no less than the amount of the profit realized by Defendant from the Regas Square Project.

## COUNT VII – PROCUREMENT OF BREACH OF CONTRACT

51. That the allegations and averments of Paragraphs 1 through 50 are incorporated herein by reference as if stated in verbatim.

52. The Plaintiff asserts that Defendant FrameCo induced Mensinger to breach or otherwise violate his Confidentiality Agreement with Plaintiff, thereby procuring a breach of contract in violation of Tenn. Code Ann. § 47-50-109.

53. Plaintiff has been damaged by the foregoing breach in an amount no less than $500,000.00, for which Defendant FrameCo is liable.

54. Defendant FrameCo is further liable for treble damages pursuant to Tenn. Code Ann. § 47-50-109.

55. That Jobsite alleges and avers because of its security interest in all of the assets of Odom the conduct of Frameco and Mensinger has directly resulted in the diminution of value of the assets securing the debts of Odom to Jobsite.

WHEREFORE, premises considered, Jobsite prays as follows:

1. That Jobsite be granted a money judgment against FrameCo and Mensinger, jointly and severally, in an amount of no less than $500,000.00, for their intentional interference with the business relations of Jobsite regarding the Regas Square Project;

2. That Jobsite be granted a money judgment against FrameCo and Mensinger, jointly and severally, in an amount of no less than $500,000.00 for the conspiracy of FrameCo and Mensinger as set forth herein;

3. That Jobsite be granted a money judgment against FrameCo and Mensinger, jointly and severally, in an amount of no less than $500,000.00 for the unlawful use and dissemination of trade secrets and confidential information as set forth herein;

4. That Jobsite be granted a money judgment against FrameCo, in an amount of no less than $500,000.00 pursuant to the doctrine of Respondeat Superior in that FrameCo is responsible for the wrongful acts of its employee Mensinger, especially since such wrongful acts directly benefited FrameCo;

5. That Jobsite be granted a money judgment against FrameCo in an amount of no less than $500,000.00 for the unjust enrichment of FrameCo;

6. That Jobsite be granted a money judgment against FrameCo in an amount of no less than $500,000.00 for its procurement of Mensinger's breach of his Confidentiality Agreement, and that such amount be trebled pursuant to Tenn. Code Ann. § 47-50-109;

7. That Jobsite be granted a money judgment against FrameCo and Mensinger, jointly and severally, for punitive damages because of its intentional actions that have resulted in significant damage to not only the business of Jobsite;

Page **11** of **13**

Case 3:18-cv-00114-DCLC-HBG Document 16 Filed 04/18/18 Page 11 of 13 PageID #: 125

8. That Jobsite be awarded all of its attorneys' fees and expenses for having to pursue this matter against FrameCo and Mensinger;

9. That Jobsite be awarded such damages, attorney's fees and other damages as it may be entitled to, in an amount of no less than $500,000.00, because of the violations of TCA § 47-25-1701, et. seq., by FrameCo and Mensinger;

10. That Jobsite be awarded a money judgment against Mensinger in an amount of no less than $500,000.00 because of Mensinger's breach of the Confidentiality Agreement attached hereto as Exhibit A;

11. That all costs of this cause be taxed to FrameCo and Mensinger; and

12. For such other and further relief as to which Jobsite may show entitlement.

This the 18th day of April, 2018.

**JOBSITE STEEL MANUFACTURING, LLC**

By: /s/ Walter N. Winchester
Walter N. Winchester, BPR #014530
Joshua R. Holden, BPR # 020791
E. Brian Sellers, BPR #011317
Winchester, Sellers, Foster & Steele, P.C.
Suite 1000, First Tennessee Plaza
800 S. Gay Street
Knoxville, Tennessee  37929
(865) 637-1980
wwinchester@wsfs-law.com

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and exact copies of the foregoing document been served upon all counsel, by delivering a copy to the following by United States mail, first class and properly addressed with sufficient postage thereupon to carry the same to its destination:

Oliver Adams, Esq.
Attorney for Defendant, FrameCo., Inc.
HODGES DOUGHTY & CARSON
617 Main Street
P.O. Box 869
Knoxville, TN 37901-0869

David Posner, Esq.
Dustin M. Dow, Esq.
Attorneys for Defendant, FrameCo, Inc.
BAKER HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114

Jennifer B. Morton, Esq.
Maha M. Ayesh, Esq.
Attorneys for Defendant, Joshua Mensinger
**Jennifer Morton Law, PLLC**
8217 Pickens Gap Road
Knoxville, TN 37920

This the 18th day of April, 2018.

**Winchester, Sellers, Foster & Steele, P.C.**

By: /s/ Walter N. Winchester